**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GAME PLAN, INC.,<br>10201 Martin Luther King Jr. Highway,<br>Suite 207,<br>Bowie, Maryland 20720<br>        Plaintiff,<br><br>        v.<br><br>UNINTERRUPTED LLC<br>1575 N. Gower Street<br>Suite 150<br>Los Angeles, CA 90028<br><br>NIKE INC.<br>One Bowerman Drive<br>Beaverton, Oregon 97005-6453<br><br>WALT DISNEY COMPANY doing business as ESPN, INC<br>ESPN Plaza<br>Bristol, Connecticut 06010-7454<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC.<br>110 W 44th Street<br>New York, New York 10036<br><br>        Defendants. | Civil Action No. _____<br><br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

The Plaintiff, Game Plan, Inc. ("Game Plan"), as and for its Complaint against Defendants Uninterrupted LLC ("Uninterrupted"), Nike, Inc. ("Nike"), WALT DISNEY COMPANY doing business as ESPN, Inc. ("ESPN"), and Take-Two Interactive Software, Inc. ("NBA 2K") (collectively "the Defendants"), by and through undersigned counsel, hereby alleges as follows:

1

## NATURE OF THE ACTION

1. Game Plan brings this claim against the named Defendants for the Defendants' unauthorized use of the Plaintiff's U.S. Registered Trademark 5,487,497. This action encompasses the following claims: (1) Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114 *et seq.*; (2) false Designation of Origin under the Lanham Act, 15 U.S.C. § 1125(a); (3) Trademark Dilution under the Lanham Act, 15 U.S.C. §1125(c); (4) unfair competition; and (5) unjust enrichment. Game Plan seeks injunctive and other equitable relief and damages against Defendants who respectively operate and control a media content production company (Uninterrupted), a company that manufactures, designs, and distributes clothing (Nike), a production and media broadcasting company (ESPN), and a videogaming and virtual arts company (NBA 2K). The claims asserted in this Complaint arise under the Lanham Act of the United States, 15 U.S.C. §1051, et seq.

## PARTIES

2. Plaintiff, Game Plan, is an independent, section 501(c)(3) nonprofit organization duly organized under the laws of the State of Maryland, having its headquarters and principal place of business in Bowie, Maryland. Game Plan is dedicated to enhancing, informing, and educating the youth to ascend through the ranks of high school and college athletics and academics in order to attain professional level success whether in sports or otherwise. Game Plan is providing their products and services to a population that does not have the same access as others to the information and resources Game Plan provides. Game Plan is able to provide this information through guest speakers and written programming to help the youth attain the success they desire. *SEE APPENDIX.*

3. Upon information and belief, Defendant, Uninterrupted, is a limited liability company, organized under the State laws of Delaware, with its principal place of business in Los

Angeles, California with an additional office, in New York, New York, as it provides media content and sells clothing product internationally.

4. Upon information and belief, Defendant, Nike Inc., is a publicly traded corporation, located in Beaverton, Oregon, as it manufactures and sells product and services internationally.

5. Upon information and belief, Defendant, ESPN, is a wholly owned subsidiary of the Walt Disney Company, which is a corporation, with its principal place of business in Bristol, Connecticut, as it provides media content and services internationally.

6. Upon information and belief, Defendant, Take-Two Interactive Software, or NBA 2K, is a corporation, with its principal place of business in New York, New York, as it provides videogaming content and services internationally.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (trademarks) because this action arises out of Defendants' violation of 15 U.S.C. §1114, 1125 and 15 U.S.C. § 1051 *et seq.* (The Lanham Act). Additionally, the Court has subject matter jurisdiction over Game Plan's claims for unfair competition and unjust enrichment pursuant to 28 U.S.C. § 1367. Furthermore, this Court has authority in this matter under diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and more than $75,000 is in controversy.

8. Personal jurisdiction over the Defendants is proper because each has carried on a continuous and systematic part of its general business within the District of Columbia, including but not limited to promoting media content (Uninterrupted, NIKE, ESPN, NBA 2K), retail products at their respective websites, (Uninterrupted.com, nike.com, espn.com, nba2k.com) that are accessible by anyone in the District of Columbia and the world, and each would reasonably expect to be subject to the jurisdiction of the District. Upon information and belief, these

websites have been accessed in the District of Columbia for commercial purposes, including some of the Defendants work product being within the District.  For example, Nike runs two brick and mortar retail stores in the District of Columbia.

9. Upon information and belief, Uninterrupted, by and through its founder, LeBron James, saw the use of the mark by Game Plan while in the District of Columbia, as well as Uninterrupted streaming and sharing content over cable systems and the worldwide web creating sufficient contacts in the District of Columbia.

10. NBA 2K is a videogame played by consumers, using Game Plan's mark, in the District of Columbia.

11. ESPN aired the media content using Game Plan's mark in the District of Columbia.

12. The Court has personal jurisdiction pursuant to the District of Columbia long-arm statute, D.C. Code § 13-423 (2020), because, among other things, the Defendants have transacted business in the District of Columbia.

13. Venue is proper in the District pursuant to 28 U.S.C. § 1391(b)-(3) and 28 U.S.C. § 1391(d) because a substantial part of the events giving rise to Game Plan's claims has occurred in this judicial district, because a substantial occurrence in the infringement of the mark was situated in this judicial district, and because a substantial part of the harm caused by the Defendants has occurred in this judicial district.  Defendants have conducted business and have utilized instrumentalities located in the District of Columbia to carry out the acts which Game Plan complains; and the Defendants have utilized customers located in the District of Columbia causing the harm which Game Plan complains.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(c) because Defendants are subject to personal jurisdiction in this judicial district.

15. An actual, present and justiciable case or controversy has arisen between the parties. The Defendants have each made use of Game Plan's mark, to sell products and or services in the District based on information and belief, and the wide range of retail access and media streaming by each Defendant, respectively, in the District of Columbia.

## FACTUAL BACKGROUND

**Game Plan's Services, Product and Reputation were harmed by the Defendants**

16. Defendants, through their infringing activities of counterfeit, copy, and colorable imitation of the Plaintiff's mark, knowingly put goods and services into the stream of commerce as media production, videogaming, and the retail of clothing and clothing bearing a counterfeit, copy, and or colorable imitation of the Plaintiff's mark. These actions have caused a likelihood of confusion, mistake, and deception and continue to cause irreparable injury to Game Plan, its participants, and the public.

17. The Defendants have each used the Plaintiff's trademark, or a counterfeit, copy and colorable imitation thereof, to their financial benefit.

18. Game Plan is a charitable organization, registered as a 501(c)(3), that aims to enrich the lives of America's youth by providing information, education, and access to resources to allow their participants in their program to have an opportunity to successfully ascend from high school to college and be gainfully employed in their desired pursuits.

19. Game Plan developed its "1st Place" affirmation (or mantra) to begin and close each education curriculum program, as well as using the mantra in presentations, and with the sale of products including t-shirts bearing the logo and word mark "I AM MORE THAN AN ATHLETE" including the "GP. GAME PLAN" logo.

20. These "I AM MORE THAN AN ATHLETE. GP. GAME PLAN" t-shirts were marketing material for Game Plan and a revenue generator for the non-profit.

21. Game Plan, Inc. first filed its application for U.S. Trademark Registration on December 28, 2016, and the mark was registered on June 5, 2018.

22. Game Plan is the owner of the mark: U.S. Registration Number 5,487,497.

23. The logo and word mark "I AM MORE THAN AN ATHLETE GP. GAME PLAN" were used to identify to the public as the source of its goods and services.

24. Game Plan's first use in the stream of commerce was October 8, 2017.

25. On October 8, 2017, Game Plan, with its CEO and President, Sam Sesay, and program participants attended a Washington Wizards basketball game versus the Cleveland Cavaliers.

26. At the game, the President and CEO, and a group of Game Plan Inc. participants wore the black t-shirts with large, bold, white font across the front of the t-shirt, which identified the source of the t-shirt and identified the services of the program.

27. The Game Plan participants were able to meet with Washington Wizards' All-Star guard, John Wall, during pre-game.

28. The group wearing the t-shirts were courtside in close proximity to both the Washington Wizards' players and the visiting Cleveland Cavaliers' players while the players were preparing for the game.

29. The Game Plan participants and its President and CEO took pictures with John Wall, while seated courtside, with few other spectators in attendance.

30. John Wall signed autographs for the kids and posed for pictures with the kids, while John Wall's teammates and opponents warmed up for the game, in close proximity.

31. Game Plan and its participants remained at the game for its entirety, which was a cool experience for the Game Plan, Inc. organization and its students.

32. The exposure at the game and experience would greatly grow the program and its awareness to the public.

33.     The attendance at the game gave Game Plan tremendous exposure, as it was able to gain attention from John Wall in front of his peers including the (arguably) most famous athlete in the world, as a member of the Cleveland Cavaliers, at the time, LeBron James, who did not play that game, but was in attendance.

34.     Uninterrupted's unauthorized use of Game Plan's mark has harmed and significantly diminished the ability for Game Plan to operate its business of selling t-shirts in the stream of commerce and making media and live content production and presentations.

*The Inception of the Unauthorized Use*

35.     On February 16, 2018, following that Washington Wizards and Cleveland Cavaliers pre-season NBA basketball game, in Washington, D.C., the most popular athlete in the world took to Instagram to respond to the now infamous "shut up and dribble" comment made by news personality, Laura Ingraham, on FOX NEWS.

36.     In response to "shut up and dribble," LeBron James posted a picture to his Instagram account, capturing a neon light sign bearing the words "I AM MORE THAN AN ATHLETE." And, he added a hashtag that read "we will not shut up and dribble."

37.     The February 16, 2018 picture, on LeBron James's Instagram account, captures a sign within the Los Angeles offices of Uninterrupted.

38.     Instagram is a premier social media and marketing platform, where Mr. James boasts millions of followers from around the world.

39.     This neon light sign got substantial coverage throughout the media when LeBron James made this Instagram post.

40.     This media conflict or dispute with news personality Laura Ingraham, gave LeBron James and Uninterrupted the opportunity to use the mark "I AM MORE THAN AN ATHLETE" in connection to LeBron James being "more" than a basketball player.

41. Uninterrupted then used "I AM MORE THAN AN ATHLETE" to sell merchandise and as a part of their media content production services.

42. Game Plan sent Uninterrupted a cease and desist letter, which Uninterrupted acknowledged.

*The other Defendants joined in the harmful acts*

43. Upon information and belief, Uninterrupted used "I AM MORE THAN AN ATHLETE" in media content production with ESPN.

44. Upon information and belief, Uninterrupted used "I AM MORE THAN AN ATHLTE" in videogaming with NBA 2K.

45. Upon information and belief, Uninterrupted used "I AM MORE THAN AN ATHLETLE" in the sell of clothing with Nike.

46. Nike made t-shirts, hats, hoodies, sweatpants, and a basketball court, among other things, with the use of "I AM MORE THAN AN ATHLETE" or a version of that phrase.

47. ESPN used "I AM MORE THAN AN ATHLETE" to produce media content on various outlets owned by EPSN, and to screen a documentary or short series of episodes using the mark "I AM MORE THAN AN ATHLETE."

48. The very popular National Basketball Association licensed videogame called "NBA 2K" also used "I AM MORE THAN AN ATHLETE" in certain features of the videogame.

*Who is Game Plan?*

49. Game Plan was created in 2015, so that as an independent charitable organization it could provide information, education, products, and services to young people trying to succeed in athletics and as academics. Game Plan's goal is to help the participants achieve their dreams of a quality education, athletic career, and professional career, in sports or otherwise.

50. Game Plan, Inc. is the charitable provider of the media content for education and entertainment programming, and t-shirts bearing the trademark.

51. Game Plan is listed as the owner for the U.S. Trademark Registration Number 5,487,497 , however each of the Defendants have used this mark, or a counterfeit, copy, or colorable imitation of the mark to sell, market and promote goods and services to profit their respective businesses. *SEE APPENDIX* at 1.

52. Game Plan has invested substantial resources in developing its products and services. Due to the effectiveness of Game Plan's marketing, products, and services, Game Plan has generated substantial goodwill with its customers, consumers, and participants in its programming, establishing a strong brand and developing the Game Plan name and the "I AM MORE THAN AN ATHLETE. GP. GAME PLAN" mark within its channels of trade, with sales of product nationally.

53. Game Plan invested thousands of dollars in building and sustaining substantial goodwill in the development and marketing of the mark.

54. Game Plan has a registered trademark representing the quality of its product and services and its brand, including its 1st Place Affirmation, and common law rights for Game Plan's education programming and the "I AM MORE THAN AN ATHLETE" t-shirts with the GP. GAMEPLAN logo: . *SEE APPENDIX*.

55. Game Plan has a 1st Place affirmation or Mantra which incorporates the phrase, "I AM MORE THAN AN ATHLETE" and it produced an audiovisual commercial promoting the organization that was distributed on YouTube, Facebook, and Instagram. *SEE APPENDIX* at 6-7.

56. Game Plan was featured in news articles and continues to put on programming in high schools during afterschool hours. *SEE APPENDIX* at 8.

57. In 2017, Game Plan successfully aligned itself with professional sports organizations to help the reach and exposure of the Game Plan goods and services.

58. Game Plan sells t-shirts to generate revenue, by selling the t-shirts to the public on its website [gameplaninc.org/buy-now/](gameplaninc.org/buy-now/) and, to all the children that participate in the program.

59. Game Plan provides its programming to schools within the Washington, DC metro area to provide its goods and services. *SEE APPENDIX* at 22.

60. Since October 2017, Game Plan has used the mark "I AM MORE THAN AN ATHELTE GP. GAME PLAN" in the interstate stream of commerce with certain logos bearing the name as a trademark to identify the goods and identify the organization as the sole source of its goods and services.

61. In addition, Game Plan has continually used and promoted the mark, which the Defendant Uninterrupted was aware.

62. Notwithstanding that Game Plan has made continuous use of the mark, Game Plan demanded for Uninterrupted to cease and desist from using its mark.

*The Defendants worked together*

63. Upon information and belief, Uninterrupted, in July 2018, entered into agreements with ESPN, NIKE, and NBA 2K, among others to use the "I AM MORE THAN AN ATHLETE" mark.

64. Upon information and belief, NIKE admitted its use of "I AM MORE THAN AN ATHLETE" is similar to Game Plan's mark as it was being used for similar products and services.

65. Upon information and belief, ESPN sought to protect itself against a potential third-party claim regarding Uninterrupted's use and ESPN's use of "I AM MORE THAN AN ATHLETE."

66. Game Plan's mark was known to the founder of Uninterrupted, LeBron James, who first saw the mark in use, in Washington, D.C.

### Uninterrupted LLC

67. Uninterrupted was founded by the most famous basketball athlete in the world, LeBron James.

68. Uninterrupted is a media production company that sells clothing products on its website.

69. Uninterrupted creates media content by providing the human resources, concepts and equipment required to make an audiovisual production.

70. Uninterrupted sells its content to third parties for distribution or partners with third parties to distribute that content.

71. As a way to promote the brand of services for media content production, Uninterrupted merchandized to market and generate revenue or profits, with third-party made products that include the wording "I AM MORE THAN AN ATHLETE" and "MORE THAN AN ATHLETE."

72. "I AM MORE THAN AN ATHLETE" and "MORE THAN AN ATHLETE" clothing are being sold on Uninterrupted's website at www.uninterrupted.com/store.

73. Uninterrupted's founder, LeBron James, played a basketball game on October 8, 2017, where a group of Game Plan participants and its President and CEO attended, while each wore a black "I AM MORE THAN AN ATHLETE" t-shirt, while meeting with John Wall courtside during pre-game to take pictures as John Wall also spoke to the participants.  (See image below).



74. Upon information and belief, Uninterrupted went under a rebrand of its business shortly after the October 8, 2017 basketball game, in November or December of 2017.

75. On February 16, 2018, by way of LeBron James's Instagram account, Uninterrupted released its new brand, by LeBron James posting a picture of a neon light sign within Uninterrupted's office, as a response to Laura Ingraham's "shut up and dribble" comment.




**Harm to Game Plan**

76. Uninterrupted with the help of the most recognizable athlete in the world and the most prominent athletic clothing company, and sport media content producer generated revenue using a word mark that is nearly identical to Game Plan's mark.

77. In March 2018, Uninterrupted screen printed "I AM MORE THAN AN ATHLETE" on clothing and sold those clothing products on its online store.

78. In July 2018, Uninterrupted with ESPN began production of an audiovisual series titled, "UNINTERRUPTED's More than an Athlete" on the subject matter of LeBron James and his business partners, with the use of the mark "I AM MORE THAN AN ATHLETE."

79. That ESPN/Uninterrupted series was distributed internationally, which was used to inform and educate viewers of how LeBron James and his business enterprises have been successful beyond the athletic surface.



80. In August 2018, Uninterrupted partnered or contracted with NIKE to begin the production and retail of t-shirts, hoodies, shorts, socks and hats, with the use of the mark "I AM MORE THAN AN ATHLETE" that are and were sold internationally.



81. At some time after August 2018, Uninterrupted partnered and contracted with NBA 2K to begin the use of the "I AM MORE THAN AN ATHLETE" mark in connection with

characters within the NBA 2K videogame production; and, that videogame is and was sold internationally.



## FIRST CLAIM FOR RELIEF

**Trademark Infringement under the Lanham Act—15 U.S.C. § 1114** *et. Seq.*

82. Game Plan incorporates by reference each and every allegation set forth in paragraphs 1 through 81 above.

83. Defendants have used Game Plan's trademarks in interstate commerce, including Game Plan's federally registered trademark for the word mark "I AM MORE THAN AN ATHLETE. GP. GAME PLAN."

84. By doing so, Defendants are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the fake and unauthorized versions of the goods and services of Game Plan, Inc.

85. As a result of their wrongful conduct, Defendants are liable to Game Plan for violation of the Lanham Act.

86. Game Plan seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial, not less than $33,000,000 USD.

87. As a direct result of Defendants' actions, Game Plan has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

88. Defendants' wrongful and unauthorized use of Game Plan's trademarks to promote, market, or sell products and services constitutes trademark infringement pursuant to 15 U.S.C. § 1114 *et seq.*

89. Uninterrupted sold t-shirts, other clothing, and media content using Game Plan's mark.

90. Nike sold clothing using Game Plan's mark.

91. ESPN produced and distributed media content using Game Plan's mark.

92. NBA 2K sold video games using Game Plan's mark.

93. Each Defendant's use of Game Plan's mark was a wrongful and an unauthorized use of Game Plan's mark.

## SECOND CLAIM FOR RELIEF

94. Game Plan incorporates by reference each and every allegation set forth in paragraphs 1 through 93 above.

95. Game Plan's registered trademarks are distinctive marks that are associated with Game Plan and exclusively identify its business, products, and services.

96. Defendants make unauthorized use of Game Plan's trademarks. By doing so, Defendants create a colorable imitation and false designations of origin as to tainted Game Plan products that are likely to cause confusion, mistake, or deception.

97. As a result of their wrongful conduct, Defendants are liable to Game Plan for violation of the Lanham Act, 15 U.S.C. § 1125(a).

98. Game Plan seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

99. As a direct result of Defendants' actions, Game Plan has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendant's actions are enjoined.

## THIRD CLAIM FOR RELIEF

### Trademark Dilution under the Lanham Act—15 U.S.C. § 1125(c)

100. Game Plan incorporates by reference each and every allegation set forth in paragraphs 1 through 99 above.

101. Game Plan's trademark was gaining fame and strongly associated with Game Plan, and exclusively identify its business, products, and services.

102. Defendants make unauthorized use or colorable imitation of Game Plan's trademark. By doing so, Defendants are likely to cause dilution by tarnishment of Game Plan's trademarks.

103. Game Plan seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial, not less than $33,000,000 USD.

104. As a direct result of Defendants' actions, Game Plan has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## FOURTH CLAIM FOR RELIEF

### Unfair Competition

105. Game Plan incorporates by reference each and every allegation set forth in paragraphs 1 through 104 above.

106. The acts of Defendants complained of herein constitute unfair competition at the expense of Game Plan in violation of the common law. Defendants used, without authorization or license, Game Plan's trademarks in a deceptive manner likely to mislead customers into falsely believing Defendants' conduct was that of Game Plan. Or alternatively, diverted customers away from use of Game Plan's products and services, as Defendants conspired to promote the trademarks in conjunction with their own brands and products.

107.     Defendants' actions have irreparably injured Game Plan by tarnishing its reputation with its customers.  Game Plan has cultivated good-will with customers at great expense over the years.

### FIFTH CLAIM OF RELIEF

### Unjust Enrichment

108.     Game Plan incorporates by reference each and every allegation set forth in paragraphs 1 through 107 above.

109.     The acts of Defendants complained of herein constitute unjust enrichment of the Defendants at the expense of Game Plan in violation of the common law.  Defendants used, without authorization or license, a trademark belonging to Game Plan to facilitate unlawful conduct of selling products and distributing content inuring to the benefit of Defendants.  In this manner, Game Plan conferred a benefit on the Defendants.

110.     Defendants retained the benefit of and profited unjustly from their unauthorized and unlicensed use of Game Plan's intellectual property.

111.     Upon information and belief, Defendants had an appreciation and knowledge of the benefit they derived from their unauthorized and unlicensed use of Game Plan's intellectual property.

112.     Retention by the Defendants of the benefit and profits they derived from their malfeasance would be inequitable and unjust.

113.     Game Plan seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial, not less than $33,000,000 USD.

114.     As a direct result of Defendants' actions, Game Plan suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendants' actions are enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, Game Plan prays that the Court:

1. Enter judgment in favor of Game Plan and against the Defendants.

2. Declare that Defendants' conduct has been willful, and that Defendants have acted with fraud, malice, and oppression.

3. Enter a preliminary and permanent injunction enjoining Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and all persons and entities in active concert or participation with them, from engaging in any of the activity complained of herein or from causing any of the injury complained of herein and from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activity complained of herein or from causing any of the injury complained of herein.

4. Enter a preliminary and permanent injunction giving Game Plan control over the instrumentality used by the Defendants to cause injury and enjoining Defendants from using such instrumentalities.

5. Enter judgment awarding Game Plan actual damages from Defendants, adequate to compensate Game Plan for Defendants' activity complained of herein and for any injury complained of herein including but not limited to interest and costs, in an amount to be proven at trial.

6. Enter judgment disgorging Defendants' profits.

7. Enter judgment awarding enhanced, exemplary and special damages, in an amount to be proven at trial.

8. Enter judgment awarding attorneys' fees and costs, and order such other relief that the Court deems just and reasonable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Game Plan demands trial by jury for all claims triable by jury.

Dated: February 18, 2020                     Respectfully Submitted,

/s/ Ryan L. Jones
DC Bar No. 1015309
Ryan L. Jones Law, LLC
1133 21st Street NW, Suite M200
Washington, DC 20036
ryan@rljoneslaw.com
 (202) 340-8786

*Attorney for Plaintiff Game Plan, Inc*.